The opinion of the court was delivered by
Nevius, J.
In support of the first reason assigned, it is said that this land could not be divided, under the act for the more *694 easy partition of lands, passed in 1789, and under which the proceedings in this case were had ; because that act requires the partition to be made in equal shares, and the shares here are unequal. It appears by the record, that the land divided was 104 acres, assigned to the widow of Montgomery Reading for her dower ; that George Armstrong, in right of his wife, claimed two undivided eighth parts ; that the commissioners were directed to divide the whole, into eight equal parts or shares; and that they did so; alloting by ballot, to the names of William, Charles, and Alexander Reading, two shares each ; and to the names of Isabella and Charlotte Reading, one share each. From this it is manifest, that these lands had descended, and were held by the original tenants, under the statute of descents passed in 1780, and which was in force until 1817 ; and which provided, that the real estate of a decedent should descend to, and be inherited by his issue, in such proportion as that each male should take two shares, and each female one share, and all the shares to be equal. The position of the plaintiff is, that land so descending cannot be divided, under the act of 1789. In this he is wrong. That statute requires the division to be in equal shares, and the statute of descents of 1780, then in force, gave to the heirs equal shares, but to the males two equal shares, to the females one. I have never before heard it doubted, that lands so held were divisible, under the statute of 1789. The practice has always been, to make partition of lands so held, under that act. Any other construction would have, rendered the act almost inoperativé; for when it passed, all inheritances so descended ; and the legislature could not have intended to exclude such lands, from the operation of the act.
As to the 2d reason assigned, I do not find it sustained by the record. The partition appears to have been made, pursuant to the order of the justice and the directions of the act, into eight equal shares ; and the allotment was made in the names of the original tenants in common, and is so expressed in the report of the commissioners.
The 3d objection is, that there was no legal application for the partition ; and under this objection, it was argued that it does not appear, that the justice ascertained the number of shares, or the *695 names of the tenants in common ; or that George Armstrong had any right in the lamb, or tbut any allotment was made to him. The application is ex puree, and must be made by a co-parcener, joint tenant or tenant in common, or one who claims to beso. The application need not be by written petition, the act does not require it. Upon such application the justice must be satisfied, that a co-tenancy exists, and must ascertain the shares; but by what mode or degree of proof, is not pointed out. The original notice sets forth, that the nomination of commissioners is made upon the application of Armstrong, who claims two undivided eighth shares in the land; and the appointment, which recites the notice, directs the number of shares, into which the land is to be divided. The record then contains evidence under the hand of the justice, that an application was made; that he was satisfied of the existence of a co-tenancy • and that he had ascertained the number of shares, in which the land was held by the original tenants. The notice is in the very form prescribed by the act; and the appointment, both in form and substance, is according to approved precedents. But if these matters were not sufficiently expressed in the record, the court will nevertheless intend, that the justice had satisfied himself upon these points, before he made the appointment; and will not set aside the partition, until it is made to appear that there was no application, and no ascertainment of a co-tenancy, or of the number of the original tenants. As the evidence to satisfy the justice of these particulars constitutes no part of the record, and need not be returned to the office, the party denying them would be entitled to a Certiorari, directed to the justice, to send up such evidence, or to a rule upon him to certify, whether such evidence was laid before him. Until this is done, the court will not intend, that the justice has neglected his duty, or exceeded his authority; and that too without even an allegation, that he has done so. But it is said, that it does not appear that the justice ascertained, who were the owners of the other shares of the land divided. It need not so appear ; nor was it the duty of the justice to ascertain, who were then the owners ; and in many cases it might be impossible for him to do so. The object of the application is to obtain a severance of the interest of the applicant; and to effect this, the *696 justice is not to inquire who are the owners, but only to ascertain the number of equal shares, in which the lands were held by the original co-parceners, joint tenants or tenants in common. Having done this he has performed all that the act requires.
Nor is it any objection to these proceedings, that it does not appear that any allotment was made to Armstrong. If he was not an original co-tenant, it ought not so to appear; for the allotment by law must be in the names of the original tenants; and if he stands in the relation qf heir or purchaser to any one of such original tenants, he will be entitled to the share allotted to such tenant. But it need not so appear upon the record. I see no such error in the proceedings in this case, as in my opinion will warrant the court to set them aside.
Judgment for the defendant.
Whitehead and Carpenter, J. J., concurred. Hornblower, C. J., and Randolph, J., did not hear the argument and expressed no opinion.